FILED'09 JUN 26 14:34USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,          07-CR-535-BR

        Plaintiff,

                                                 OPINION AND ORDER

v.

JOSEPH OQUENDO SALADINO,
RICHARD ALLEN FUSELIER,
MARCEL ROY BENDSHADLER,
MICHAEL SEAN MUNGOVAN, and
RICHARD J. ORTT,

        Defendants.

KARIN J. IMMERGUT
United States Attorney
ALLAN M. GARTEN
CRAIG J. GABRIEL
LORI A. HENDRICKSON
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

        Attorneys for Plaintiff

1 - OPINION AND ORDER

**RONALD H. HOEVET**
**CELIA A. HOWES**
Hoevet, Boise & Olson, PC
1000 S.W. Broadway
Suite 1500
Portland, OR 97205
(503) 228-0497

       Attorneys for Defendant Joseph Oquendo Saladino

**SAMUEL C. KAUFFMAN**
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204-3141
503 228-3939 x3220

       Attorneys for Defendant Richard Allen Fuselier

**STEVEN WAX**
Federal Public Defender
**NANCY BERGESON**
Assistant Federal Public Defender
101 S.W. Main Street
Suite 1700
Portland, OR 97204
(503) 326-2123

       Attorneys for Defendant Marcel Roy Bendshadler

**LYNNE B. MORGAN**
1420 World Trade Center
121 S.W. Salmon St.
Suite 1420
Portland, OR 97204
(503) 222-0568

       Attorney for Defendant Michael Sean Mungovan

**LAURIE BENDER**
735 S.W. First Avenue
2nd Floor
Portland, OR 97204
(503) 241-7075

       Attorney for Defendant Richard J. Ortt

2 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Richard Allen Fuselier's Motion (#169) to Suppress Statements. The Court conducted a evidentiary hearing on June 11, 2009. For the reasons that follow, the Court **DENIES** Defendant's Motion.

## BACKGROUND

On December 20, 2007, a grand jury indicted Defendants Fuselier, Joseph Oquendo Saladino, Marcel Roy Bendshadler, Michael Sean Mungovan, and Richard J. Ortt on one count of Conspiracy to Defraud in violation of 18 U.S.C. § 371.

On May 4, 2009, Fuselier filed a Motion to Suppress Statements in which he seeks to suppress the statements he made to Special Agents Bell and Dittman on October 5, 2005. Also on May 4, 2009, Saladino filed a Motion for Disclosure of Richard Fuselier's Proffer Statements and a Motion to Sever, Bendshadler filed a Motion to Sever and Objection to Joinder, and Ortt filed a Motion to Sever Defendants for Trial.

On June 11, 2009, the Court conducted an evidentiary hearing on Fuselier's Motion to Suppress; heard oral argument on all of Defendants' Motions; denied the Motions of Defendants Saladino, Bendshadler, and Ortt; and took Fuselier's Motion to Suppress under advisement.

## **FINDINGS OF FACT**

The Court finds the following facts by a preponderance of the evidence:

On October 5, 2005, Special Agents Jason Bell and Jon Dittman conducted an interview with Fuselier at a U-Copy store owned by Fuselier in Lafayette, Louisiana. The U-Copy store was located in an indoor mall immediately by the entrance and did not have any doors between the store and the mall. Because the U-Copy store was unattended when the agents arrived, they called a number that appeared on one of the copy machines, Fuselier answered, and the agents told him they had a copy stuck in one of the machines and asked him to assist them.

When Fuselier arrived at the store, Special Agents Bell and Dittman stood in the back of the store and Fuselier stood between the agents and the store exit. The agents identified themselves as special agents with the Internal Revenue Service (IRS), Criminal Investigation Division, and showed Fuselier their badges and credentials. Special Agent Bell then read Fuselier the IRS's "Non-Custody Statement of Rights," which provides:

> As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue law, and related offenses. In connection with my investigation of [you], I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any

4 - OPINION AND ORDER

> way. I also advise you that anything which you
> say and any documents which you submit may be used
> against you in any criminal proceeding which may
> be undertaken. I advise you further that you may,
> if you wish, seek the assistance of any attorney
> before responding.
>
> Do you understand these rights?

Special Agent Bell then informed Fuselier that the agents were there to assist the United States Attorney's Office with a grand-jury investigation related to Saladino, the Freedom Privacy Committee, Compensation Consultants, and Fuselier. Special Agent Bell asked Fuselier whether he understood his rights as set out and whether he would be willing to waive those rights. Although Fuselier responded he would not answer questions without an attorney, he also stated he would answer questions about Saladino without an attorney. Before the agents had a chance to respond to Fuselier's statement, Fuselier began discussing issues related to his citizenship and his belief that the investigation was illegal.

At that point, Special Agent Bell stopped Fuselier and requested him to clarify his earlier statement about the questions he was willing to answer. Fuselier repeated he was willing to answer questions about Saladino without an attorney.

Accordingly, the agents began asking Fuselier questions "about Saladino." The agents' interview with Fuselier lasted three and one-half hours during which time Fuselier continued to stand between the agents and the exit. At least two customers

5 - OPINION AND ORDER

came into the store during the interview, used the copy machines, and left.

At some point during the interview, Special Agent Dittman again advised Fuselier about his rights and informed him that he did not have to answer any questions that would tend to incriminate him in any way. Although Fuselier responded he understood and continued to answer questions, Fuselier specifically declined to tell the agents where he was currently residing or to provide information about Dick Allen.

At the end of the interview, the agents thanked Fuselier, Special Agent Bell provided Fuselier with his business card and contact information, and the agents and Fuselier walked out of the store in different directions.

## DISCUSSION

> The Constitution demands that confessions be made voluntarily. *See Lego v. Twomey*, 404 U.S. 477, 483-85 (1972). A confession is involuntary if coerced either by physical intimidation or psychological pressure. *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981). The test is whether [the agents] overbore [the subject's] will when he confessed.

*United States v. Haswood,* 350 F.3d 1024, 1027 (9th Cir. 2003) (citations omitted).

Fuselier asserts the agents' advice-of-rights was insufficient because the advice statement implies the IRS agents could force him to answer any questions that were not incrimi-

6 - OPINION AND ORDER

nating. According to Fuselier, the government, in effect, forced him to admit that a refusal to answer any question was an indication that the answer would be incriminating.

The government asserts the agents' advice statement was constitutionally adequate because (1) *Miranda* warnings are not required in noncustodial settings, (2) the Supreme Court upheld the admission of a statement given after a nearly identical warning was provided, and (3) the agents did not "overbear" Fuselier's will. In addition, the government contends the cases relied on by Fuselier are distinguishable from this one.

"The Government bears the burden of proving that [a subject's] statements were voluntary and must do so by a preponderance of the evidence." *Id.* (citing *Lego*, 404 U.S. at 489). "The totality of the circumstances contains no talismanic definition of voluntariness. Courts instead often consider the following factors: the youth of the accused, his intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Id.*

Although some forms of dishonesty and deception during interrogation do not contravene the Fifth Amendment, the Supreme Court has held "affirmative misrepresentations by the police [in certain circumstances may] invalidate a suspect's waiver of the

7 - OPINION AND ORDER

Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 576 n.8 (1987)(citing *Lynumn v. Ill.*, 372 U.S. 528 (1963) (misrepresentation by police officers that a suspect would be deprived of state financial aid for her dependent child if she failed to cooperate with authorities rendered the subsequent confession involuntary), and *Spano v. New York*, 360 U.S. 315 (1959)(misrepresentation by the suspect's friend that the friend would lose his job as a police officer if the suspect failed to cooperate rendered his statement involuntary)). Nevertheless, in *Colorado* the Supreme Court also found:

> Indeed, it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled. We have held that a valid waiver does not require that an individual be informed of all information "useful" in making his decision or all information that might . . . affec[t] his decision to confess. *[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.*

*Id.* at 576-77 (emphasis added).

In *Beckwith v. United States*, IRS agents conducted a non-custodial interview of the petitioner in his home after reading the following statement to him:

> As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses. Under the Fifth Amendment to the Constitution of the United States, I cannot compel you to answer any questions or to submit any information if such answers or information might

8 - OPINION AND ORDER

> tend to incriminate you in any way. I also advise
> you that anything which you say and any infor-
> mation which you submit may be used against you in
> any criminal proceeding which may be undertaken. I
> advise you further that you may, if you wish, seek
> the assistance of an attorney before responding.

425 U.S. 341, 343 (1976). The petitioner indicated he understood his rights, and the interview lasted three hours. *Id.* The petitioner later moved to suppress his statements on the ground that he had not been given a *Miranda* warning. The Supreme Court upheld the district court's decision to deny the motion to suppress on the ground that IRS agents are not required to give *Miranda* warnings in noncustodial interviews of defendants who are the focus of tax investigations. *Id.* at 347. The Court noted:

> We recognize, of course, that noncustodial
> interrogation might possibly in some situations,
> by virtue of some special circumstances, be
> characterized as one where the behavior of . . .
> law enforcement officials was such as to overbear
> petitioner's will to resist and bring about
> confessions not freely self-determined. When such
> a claim is raised, it is the duty of an appellate
> court, including this Court, to examine the entire
> record and make an independent determination of
> the ultimate issue of voluntariness. Proof that
> some kind of warnings were given or that none were
> given would be relevant evidence only on the issue
> of whether the questioning was in fact coercive.
> In the present case, however, . . . [t]he entire
> interview was free of coercion.

*Id.* at 347-48.

The government asserts the agents did not overbear Fuselier's will because the agents made best efforts to abide by with Fuselier's announcement that he would only answer questions

9 - OPINION AND ORDER

about Saladino; they did not use any display of force; Fuselier physically located himself between the agents and the exit for the entire interview, and, therefore, had easy access to the exit at any time during the interview; U-Copy was an area open to the public throughout the interview; and Fuselier felt free to decline to answer any questions as indicated by his refusal to do so on two occasions. The government relies on *United States v. Serline*, 707 F.2d 953 (7th Cir. 1983), to support its assertion.

In *Serline*, IRS agents had a number of noncustodial contacts with the defendant. Before each contact, the agents either read the defendant the same statement as the agents read to Fuselier or they reminded the defendant of his rights. *Id.* at 955-56. At some point, the defendant told the agents that he would not meet with the IRS on the advice of counsel, but he would have his attorney mail a copy of his tax return to the agents. *Id.* Nevertheless, the agents later met with the defendant. At that meeting, the defendant stated he did not wish to cooperate, but the agents asked him further questions about his tax liability and the defendant answered. *Id.* at 956. The defendant moved to suppress his statements as involuntary on the grounds of "governmental deceit, the agents' failure to honor his stated desire not to cooperate, and other coercive conduct by the agents." *Id.* The district court held the defendant's statements were voluntary. The Seventh Circuit affirmed on the ground that

10 - OPINION AND ORDER

> [i]n contrast to the presumption of coercion that attends statements given during custodial interrogation in the absence of *Miranda* warnings, statements made during a noncustodial interrogation are not viewed with suspicion. . . . Unlike our review of custodial interrogation, in which it is our duty to determine whether the police "scrupulously honored" a request to cease questioning, in reviewing noncustodial interrogation our duty is to examine the entire record and make an independent determination of the ultimate issue of voluntariness.

*Id.* at 958 (quotations and citations omitted). The Seventh Circuit noted:

> Defendant was advised of his rights during the first interview, was reminded of them during the second, and was re-advised of them during the last three interviews. Furthermore, there is no evidence of threats or promises by the agents nor any other indication of actions that might overbear defendant's will. Defendant was an intelligent man aware of his rights and capable of saying "no" to the agents. . . . Based on these facts, [the agents'] repeated questioning of defendant . . . did not render the subsequent statements involuntary.

*Id.*

Fuselier relies on a number of cases to support his contention that his statement was not voluntary, but, as noted these cases are distinguishable. In *Mincey v. Arizona*, 437 U.S. 385 (1978), police interviewed the defendant in a hospital when he was in pain and depressed almost to the point of a coma. In *Lynumn v. Illinois*, 372 U.S. 528 (1963), the defendant confessed only after police told her that state financial aid for her infant children would be cut off and her children taken away from

11 - OPINION AND ORDER

her if she did not cooperate. In *Davis v. North Carolina*, 384 U.S. 737 (1966), a poor, uneducated defendant was interrogated repeatedly over 16 days; was not advised of any rights until he confessed on the sixteenth day; and was not allowed to use the telephone or to have visitors. In *Doody v. Schriro*, 548 F.3d 847 (9th Cir. 2008), the 17-year old defendant was arrested, and the police interrogation lasted more than 12 straight hours overnight. The interrogation involved four officers who refused to stop questioning the defendant until they received the answers they wanted, and, in addition, the officers told the defendant that he had to answer their questions.

The circumstances in this case are markedly different from those in the cases on which Fuselier relies. Here Fuselier had ready access to the exit, the questioning lasted only three and one-half hours, the agents read Fuselier his rights twice, and Fuselier freely declined to answer at least two questions.

Based on the totality of the circumstances, the Court finds by a preponderance of the evidence that the agents did not "overbear" on Fuselier during questioning and that his statements to the agents were voluntary. Accordingly, the Court denies Fuselier's Motion to Suppress Statements.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant Fuselier's

12 - OPINION AND ORDER

Motion (#169) to Suppress Statements.

IT IS SO ORDERED.

DATED this 26th day of June, 2009.

_____
ANNA J. BROWN
United States District Judge

13 - OPINION AND ORDER