FILED'10 APR 21 7:40 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,                    07-CR-535-BR

        Plaintiff,

                              OPINION AND ORDER

v.

RICHARD ALLEN FUSELIER,

        Defendant.


DWIGHT C. HOLTON
United States Attorney
ALLAN M. GARTEN
Senior Litigation Counsel
MICHELLE HOLMAN KERIN
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

        Attorneys for Plaintiff

1 - OPINION AND ORDER

**SAMUEL C. KAUFFMAN**
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204-3141
503 228-3939 x3220

**MARC D. BLACKMAN**
Ransom Blackman, LLP
1001 S.W. Fifth Avenue
Suite 1400
Portland, OR 97204
(503) 228-0487

      Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant Richard Allen Fuselier's Motion (#364) to Withdraw Plea of Guilty.  For the reasons that follow, the Court **DENIES** Fuselier's Motion.

## BACKGROUND

On December 20, 2007, Fuselier, Joseph Oquendo Saladino, Marcel Roy Bendshadler, Michael Sean Mungovan, and Richard J. Ortt were indicted by a grand jury on one count of Conspiracy to Defraud in violation of 18 U.S.C. § 371.  On September 11, 2009, Fuselier entered a plea of guilty to the charge pursuant to a Plea Agreement in which, among other things, he promised to cooperate and to testify truthfully at the trial of his co-defendants.

During the trial in November 2009, Fuselier testified in a manner that the Court perceived to be potentially inconsistent

2 - OPINION AND ORDER

with his Plea Agreement and his statements during his earlier
plea colloquy.  After the jury returned its Verdict (acquitting
Defendant Ortt, but convicting Defendants Saladino, Bendshadler,
and Mungovan), the Court requested the government and Samuel
Kauffman, counsel for Fuselier, to review the transcripts of
Fuselier's plea colloquy and trial testimony and to evaluate
whether there was any reason for concern about the sufficiency of
the process that led to Fuselier's guilty plea, particularly with
respect to the factual bases of Fuselier's plea in light of his
trial testimony and the "deceitful or dishonest means" element of
the offense.

On December 3, 2009, Mr. Kauffman advised the Court that he
and the prosecutors had considered the Court's inquiry and
"remain[ed] satisfied that there was an adequate factual basis
for Mr. Fuselier's plea."  Nevertheless, Kauffman suggested
Fuselier receive a second opinion.  Accordingly, on December 17,
2009, the Court appointed Marc Blackman as Fuselier's counsel for
the limited purpose of representing Fuselier as to the Court's
inquiry concerning his plea and trial testimony.

On March 18, 2010, Mr. Blackman filed on Fuselier's behalf a
Motion to Withdraw Plea of Guilty.  On April 8, 2010, the Court
heard oral argument on Fuselier's Motion during which the Court
questioned Fuselier directly to ensure he understood the risks he
was facing if the Court granted his Motion, specifically

including the loss of the benefits secured in his Plea Agreement.
After Fuselier personally confirmed he understood these risks
and, nonetheless, wished the Court to rule on his Motion, the
Court took the Motion under advisement.

### FACTS

During Fuselier's plea colloquy on September 11, 2009, he
testified under oath and, among other things, confirmed as true
the following factual bases set out in his Plea Petition:

    a.   Beginning in 2001 and continuing to about
February 2005, I did agree with one or more
persons to file and in fact filed tax returns
or amended returns with the Internal Revenue
Service on behalf clients who were being
threatened with criminal enforcement and
prosecution for failure to file.

    b.   The returns and amended returns we filed on
behalf of these clients accurately stated the
clients' gross income, but asserted the
theory that income earned from non-commercial
activity (including personal labor or
services) did not constitute taxable income.

    c.   Many of the returns that we filed for these
taxpayers were frivolous in that they were
filed for the sole purpose of delaying the
criminal enforcement actions against the
taxpayers, but before we had any reason to
believe that the claim was legally valid.

    d.   At least one of my clients resided or earned
income in the District of Oregon.

    e.   Accordingly, we did conspire to defraud the
United States by impeding, impairing,
obstructing or defeating the lawful functions
of the Internal Revenue Service of the
Department of the Treasury and committed at

4 - OPINION AND ORDER

least one overt act in furtherance of that
conspiracy.

Plea Pet. at ¶ 25.

In connection with his Plea Agreement, Fuselier
simultaneously entered into a Cooperation Agreement with the
government, which Fuselier confirmed he understood and
voluntarily accepted and which provided in pertinent part:

> 1. Information:  Defendant agrees to provide
> truthful and complete information, with no
> material misstatements or omissions of fact,
> relating directly or indirectly to any
> criminal activity.  Such cooperation includes
> producing any and all documents, records,
> writings, tangible objects, or materials in
> defendant's possession or control which
> relate to that criminal activity.  Defendant
> will neither attempt to protect any person or
> entity who has been involved in criminal
> activity, nor falsely implicate any person or
> entity in criminal activity.  Defendant
> agrees to cooperate with any efforts and
> requests by the USAO to verify that the
> information provided is truthful and
> complete.
>
> * * *
>
> 4. Collateral Use:  If defendant should testify
> materially contrary to the substance of the
> cooperation, or otherwise presents in any
> legal proceeding a position materially
> inconsistent with the cooperation, any
> information or evidence obtained through that
> cooperation may be used against defendant in
> any fashion, including as the basis for a
> prosecution for offenses involving perjury,
> false declaration before a grand jury or
> court, false statement, and obstruction of
> justice.
>
> * * *

5 - OPINION AND ORDER

6.    Testimony:  Defendant agrees to testify under
      oath truthfully and completely in any federal
      or state grand jury, trial, hearing, or any
      other proceeding to which defendant may be
      called as a witness.

                          *  *  *

8.    Breach of Cooperation:  It is expressly
      understood and agreed by the parties that the
      determination of whether these cooperation
      terms have been breached rests exclusively
      with the USAO, so long as that determination
      is made in good faith and not arbitrarily.
      Should the USAO determine that the defendant,
      after the date of this agreement:  (a) has
      committed any further crime or has violated
      any condition of release or supervision
      imposed by the Court (whether or not
      charged); (b) has given false, incomplete, or
      misleading testimony or information; or (c)
      has otherwise breached any condition of this
      agreement or the Plea Agreement, the USAO
      will have the right, in its sole discretion,
      to void this agreement and/or the Plea
      Agreement, in whole or in part.

Decl. of Marc Blackman, Ex. 1.

     At the September 11, 2009, plea proceeding, after reviewing

with Fuselier in detail the contents of his Plea Agreement and

Plea Petition, the Court requested Senior Litigation Counsel

Allan Garten to recite the material elements of the offense and

to summarize the evidence the government had to support the

charge against Fuselier.  In particular, the Court advised

Fuselier as follows:

            THE COURT:    I need you to listen carefully, now.
                          Mr. Garten is going to review the
                          conspiracy charge in a manner that
                          applies to you, particularly for today.

6 - OPINION AND ORDER

He'll describe the material elements.
He would have to prove each one of these
material elements beyond a reasonable
doubt.  And all 12 jurors would have to
agree he had proved each of the elements
beyond a reasonable doubt before you
could be found guilty.

This means that if even one juror did
not accept the Government's proof on one
element, you could not be found guilty.
So it's important you are reminded of
what·it is the Government has to prove.

And then, in just summary terms, he'll
describe what evidence the Government
has to support the charge.

If he says anything you think is wrong,
anything that surprises you, anything
you're not certain about, stop, talk
with Mr. Kauffman, resolve the issue.
Don't plead guilty if you have any
questions in your mind. All right?

Blackman Decl., Ex. 2 at 30.

After Fuselier confirmed he understood the Court's

statement, the government's counsel described the elements of the

charge as follows:

MR. GARTEN:    As to the elements of the crime of
conspiracy to defraud the United States
pursuant to Title 18 United States Code
Section 371, the essential elements are
that there was an agreement between
Mr. Fuselier and one or more other
individuals to obstruct a lawful
function of the Government.  Here, it
would be *to defraud the United States* by
obstructing, impeding, impairing, and
defeating the lawful functions of the
IRS in the ascertainment, computation,
assessment, and collection of revenue,
namely federal income taxes.  And that
this was *accomplished through deceitful*

7 - OPINION AND ORDER

> *or dishonest means.*  And at least one of
> the members of the conspiracy performed
> at least one overt act in furtherance of
> the conspiracy.

Blackman Decl., Ex. 2 at 32 (emphasis added).  Mr. Garten then

recited the following evidence to support the charge against

Fuselier:

MR. GARTEN:     [W]e would show -- and we will show at
trial of the other co-defendants - that
on or about February 1st, 2001,
Mr. Fuselier founded Compensation
Consultants, which was formed to assist
people to evade the assessment or
collection of federal income taxes.
That one of the programs and the
essential program developed by
Compensation Consultants and the
defendant and co-defendant, Mr. Ortt,
was the claim-of-right program.  And
that the individuals using the claim-of-
right program claim false tax reductions
equal to the amount of wages or self-
employment income earned, effectively
eliminating all of their tax
liabilities.  The Government would show
that from time to time various different
code sections of the Internal Revenue
Service's code were used, and that many
of the tax returns also claimed refunds
for social security and Medicare taxes
that had been paid.

The Government would show and will show
that the claim-of-right program was also
marketed by an organization founded by
co-defendant Joe Saladino, called the
Freedom and Privacy Committee.

The Government will show that three of
the defendants - - Mr. Mungovan, and
Bendshadler, and Mr. Ortt were also
involved in the marketing of this
fraudulent tax evasion program designed
by Mr. Fuselier.  And that Mr. Mungovan

was the national sales director for the
Freedom and Privacy Committee.
Mr. Bendshadler was the independent
representative for the [Freedom and
Privacy Committee] FPC, and Mr. Ortt - -
working with Mr. Fuselier in
Compensation Consultants [CC] --
prepared and caused to be prepared
fraudulent tax returns using the
claim-of-right program.

The Government would show that more than
1,000 tax returns were filed using the
claim-of-right program, and that various
federal injunctions were ultimately
issued against both the Freedom and
Privacy Committee and Compensations
Consultants.  The latter being the
organization founded and controlled by
Mr. Fuselier.

With respect to Mr. Fuselier's
relationship with other Government would
show that Mr. Fuselier first had contact
with Mr. Saladino in mid-2002, and that
Mr. Saladino traveled to New Orleans and
met with Mr. Fuselier and Mr. Ortt to
discuss the claim-of-right program.  The
Government would show that Mr. Fuselier
provided the claim-of-right program to
Mr. Saladino with knowledge that he
would use it, although they may have
differed on the marketing approach as to
how to use it.

The Government would show that
Mr. Saladino turned to Mr. Fuselier
periodically for advice and counsel
about the substance of the claim-
of-right program and certain issues
related to the implementation and
marketing of the claim-of-right program.

The Government would show that
Mr. Saladino would forward to
Mr. Fuselier various frivolous filing
letters that Mr. Saladino's clients
would receive from the IRS after filing

tax returns using the claim-of-right
program.

The Government would show that
Mr. Saladino was a source of clients for
Mr. Fuselier, who would refer people to
- Mr. Saladino would refer individuals
to Mr. Fuselier who were threatened with
criminal prosecution and had various
problems with the IRS.

The Government would show that
Mr. Fuselier trained defendants and I'm
just going to focus on two here -- the
several nonlawyers, who were called
litigators, to work with Mr. Saladino in
filing claims against the IRS in court.
And in fact Mr. Saladino paid for that
training, made those payments to
Mr. Fuselier.

The Government would show that
Mr. Fuselier also paid for other
services he provided, and that we have
records showing at least 11 payments,
ranging from 200 dollars to 500 dollars
during the period September 24th of
2002, through May 5th of 2003.

The Government-would show that
Mr. Saladino and Mr. Fuselier discussed
various court cases, and that
Mr. Saladino would, from time to time,
send litigation paperwork to
Mr. Fuselier for his review.

The Government would show that
Mr. Fuselier would send his news
newsletter to Mr. Saladino, and would
instruct him on the law.  And the
Government would show that Mr. Saladino
discussed with Mr. Fuselier various
court cases, like the *Ledford* [*v. United
States*, 297 F.3d 1378 (Fed. Cir. 2002),]
decision and the Gary Clark Oregon tax
court case [*Dep't of Rev. v. Clark*, No.
TC 4604, TC 4605, 2003 WL 22319439 (Or.

10 - OPINION AND ORDER

T.C. Oct. 6, 2003)].[1]

The Government would show that Mr. Ortt
assisted Mr. Fuselier in researching tax
laws and that it was frankly Mr. Ortt's
idea to start Compensation Consultants
when they had originally had another
organization called Tax Protestor
Services.

And the Government would show that
Mr. Ortt, Mr. Fuselier, and Mr. Saladino
worked together and discussed various
court filings.

In addition to that, your Honor, the
Government would show, as a general
means and a manner of how this program
was marketed, that it was the
claim-of-right which was the central
program that really tied together the
five defendants named the Indictment.

The Government would show that the
claim-of-right program was marketed
through weekly conference calls, and
conference calls on the claim-of-right
program and conference calls on various
litigation matters.

The Government would show that the
Internet was used as a means of payment,
and that Mr. Saladino would instruct
people to pay with blank money orders,
and that Mr. Saladino paid Mr. Fuselier
through the Internet and the EVO cash
manner of payment.

Blackman Decl., Ex. 2 at 32-36.

---

[1] *Ledford* and *Clark* both involved challenges by taxpayers
associated with Compensation Consultants and/or FPC and both
rejected the argument on which the claim-of-right program was
premised (*i.e.*, that compensation from personal services is not
taxable income).  *See Ledford*, 297 F.3d at 1381, and *Clark*, 2003
WL 22319439, at *1.

11 - OPINION AND ORDER

After the government's recitation, the Court engaged in the following colloquy with Fuselier:

> THE COURT:       Okay. Mr. Fuselier, sir, let me first ask you, do you understand the conspiracy charge as alleged against you in this 18-page Indictment?  Do you have it in mind, or do you need me to read it to you, all 18 pages?
>
> MR. FUSELIER:  Yes, your Honor, I understand it.
>
> THE COURT:       You do not need me to read it to you?
>
> MR. FUSELIER:  No, your Honor.
>
> THE COURT:       How do you plead to Count 1, guilty or not guilty?
>
> MR. FUSELIER:  Guilty.

Blackman Decl., Ex. 2, at 40.  The Court then engaged in the following exchange with Fuselier:

> THE COURT:       Sir, I need you to tell me, in your words, what you did that makes you guilty of the charge.  You may read to me from your petition, paragraph 25, if you wish, or you may otherwise explain yourself.
>
> MR. FUSELIER:  Yes.  We agreed to file income tax forms for clients.  If they agreed to let us report all of their income, we agreed to file those claims for clients and to -- because they were under threat of criminal action.  So we agreed to file those claims for clients.
>
> THE COURT:       Is the material that's asserted in paragraph 25, subparagraphs A, B, C, D, and E, in your petition, is all of that factually true?
>
> MR. FUSELIER:  Yes, your Honor.

THE COURT:        All right. And with respect to the overt
                  acts described in the Indictment,
                  counsel enumerated several of them: 87,
                  86, 85 - - well, 80 - - I'm looking for
                  the filings. 87, 86 - -

MR. GARTEN:       43, your Honor.

MR. FUSELIER:     Yes.

THE COURT:        43.  Those are three examples.  You
                  acknowledge your participation, as
                  alleged in each of those?

MR. FUSELIER:     Yes.  I helped each of those people file
                  those claims.

Blackman Decl., Ex. 2 at 40-41.

At the trial of Fuselier's co-defendants, Fuselier's cross-
examination by attorneys for two of the co-defendants
specifically focused on the "deceitful or dishonest means"
element of the offense and included the following testimony:

MS. BENDER:       Okay.  And so once the - - the prior
                  claim under 1341 had been denied by the
                  U.S. Federal Court of Claims, you then
                  came back with an amendment to the
                  1040X, alleging this other section.
                  Correct?

MR. FUSELIER:     Yes.  Yes.

MS. BENDER:       And you are in the process of litigating
                  that claim at this point?

MR. FUSELIER:     Yes. (Nods head.)

MS. BENDER:       All right.  And you believed in that
                  claim, I would imagine?

MR. FUSELIER:     Well, we're going to litigate it.  I
                  believe that you have a right to
                  litigate it.

MS. BENDER:      Okay.  But you don't believe that you're
                 doing anything dishonest in litigating
                 that claim?

MR. FUSELIER:    No.

MS. BENDER:      You don't believe you're doing anything
                 to defraud the United States Government,
                 do you?

MR. FUSELIER:    No.

                         * * *

MS. BENDER:      Okay.  And that the evidence that you
                 created, in preparing all of these tax
                 documents and the - - the -- the matters
                 that you directed Mr. Ortt to do, were
                 all for the purpose of making this
                 nontaxable income claim?

MR. FUSELIER:    Yes, they were.

MS. BENDER:      Okay.  Nothing about it was deceitful.
                 Correct?

MR. FUSELIER:    No.

MS. BENDER:      Nothing was hidden or concealed from the
                 Government?

MR. FUSELIER:    No, nothing was concealed.

                         * * *

MS. BERGESON:    Frivolous, to you, means incomplete.
                 Right?

MR. FUSELIER:    Or - - or filed for the purpose of
                 delay.

MS. BERGESON:    Right.

MR. FUSELIER:    We used the definition in Black's.

MS. BERGESON:    And incomplete not in the sense of
                 hiding or omitting but in the sense of
                 unperfected?

MR. FUSELIER:   Unperfected, yes.

MS. BERGESON:   Or, as you just pointed out, frivolous means filed for the purpose of delay?

MR. FUSELIER:   Yes.

MS. BERGESON:   All right.  It does not mean lying, does it?

MR. FUSELIER:   No, it doesn't.

MS. BERGESON:   It does not mean deceiving?

MR. FUSELIER:   No, it doesn't.

MS. BERGESON:   In all of this process, you've never done anything to deceive or to lie, or to intend to do those things, have you?

MR. FUSELIER:   I don't think so.

Blackman Decl., Ex. 3, at 175-76, 180, 184-85.


**STANDARDS**

Federal Rule of Criminal Procedure 11(d)(2)(B) provides a defendant may withdraw a plea of guilty before sentencing if he "can show a fair and just reason for requesting withdrawal."  The decision to permit a defendant to withdraw a guilty plea is within the discretion of the trial court.  *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009).  The Defendant bears the burden to establish that withdrawal is warranted.  *Id*.

Fair and just reasons for withdrawal include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that

did not exist when the defendant entered his plea." *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005)(quotations, citations and emphasis omitted).  While the "fair and just" standard is "generous and must be applied liberally," *Ensminger*, 567 F.3d at 590, a defendant cannot withdraw his plea "simply on a lark," *id.* (citations and quotations omitted), or because of "a change of heart." *United States v. Graibe*, 946 F.2d 1428, 1431 (9th Cir. 1991).  *See also United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987).  A defendant does not have a "right to withdraw his plea." *Id.*


## DISCUSSION

Fuselier moves to withdraw his guilty plea on three grounds: (1) there was an insufficient factual basis for Fuselier's guilty plea and the Rule 11 colloquy was inadequate, (2) Fuselier's testimony at trial established a claim of factual innocence, and (3) there is a "fatal variance" between the conspiracy charged in the Indictment and the conspiracy that formed the factual basis of Fuselier's guilty plea as to the material "deceitful or dishonest means" element of the offense.[2]

---

[2] As noted, the Court appointed Blackman solely for the purpose of representing Fuselier as to the Court's inquiry concerning Fuselier's guilty plea and trial testimony. Nevertheless, the Court addresses the additional bases to withdraw the plea raised in Fuselier's Motion to Withdraw filed by Blackman.

16 - OPINION AND ORDER

I.   **The plea colloquy was adequate and there was a sufficient factual basis for Fuselier's guilty plea.**

As noted, Fuselier asserts the Rule 11 colloquy was inadequate and there was an insufficient factual basis for his guilty plea as to the material, deceitful or dishonest means element of the offense.

A.   **Standards**

The Ninth Circuit has held

> Federal Rule of Criminal Procedure 11 requires judges to determine that a plea has a factual basis.  Fed. R. Crim. P. 11.  To satisfy this requirement, "[t]he judge must determine that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty."  *McCarthy [v. United States*, 394 U.S. 459,] 467 [1969](citation omitted).

*United States v. Jones*, 472 F.3d 1136, 1140 (9th Cir. 2007).  To adequately fulfill the requirements of Rule 11, a trial judge must

> engage in a colloquy with the defendant to confirm that the defendant understands, among other things, "the nature of each charge to which the defendant is pleading."  Fed. R. Crim. P. 11(b)(1)(G).  Before entering judgment on a plea, the court must also "determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3).  In evaluating the adequacy of a Rule 11 colloquy, we examine solely the record of the plea proceeding itself.  *United States v. Kamer*, 781 F.2d 1380, 1383 (9th Cir. 1986).  In ascertaining whether a Rule 11 error affected the defendant's substantial rights or the integrity of the proceeding, however, "we may look to other portions . . . of the limited record made in guilty plea cases."  *Minore*, 292 F.3d at 1119

17 - OPINION AND ORDER

(internal quotation marks, brackets, and citation
omitted).

*United States v. Covian-Sandoval*, 462 F.3d 1090, 1093 (9th Cir.

2006).  Thus, when considering whether a factual basis for a

guilty plea is adequate, the court may consider "all of the

evidence before it at the time of judgment."  *United States v.*

*Lomow*, 266 F.2d 1013, 1017 (9th Cir. 2001).

**B.    The plea colloquy was adequate.**

To convict a defendant of a violation of 18 U.S.C.

§ 371,

> the government must prove only that (1) the
> defendants entered into an agreement (2) to
> obstruct a lawful function of the IRS (3) by
> deceitful or dishonest means, and (4) at least one
> overt act was committed in furtherance of the
> conspiracy.

*United States v. Poseley*, Nos. 06-10446, 06-10462, 2008 WL

467695, at *1 (9th Cir. Feb. 20, 2008).  *See also United States*

*v. Caldwell*, 989 F.2d 1056, 1058 (9th Cir. 1993)(the government

must show, among other things, that the defendant obstructed the

operations of the Internal Revenue Service (IRS) by "deceit,

craft or trickery, or at least by means that are dishonest.").

The Ninth Circuit has not defined "deceitful" or "dishonest" in

the context of § 371.  In the jury instructions in this matter,

the Court instructed the jury to give these terms their ordinary

meaning.

Fuselier asserts the plea colloquy was not adequate

because the deceitful or dishonest means element of the charge
was not addressed at the plea proceeding.  As noted, however, the
government's counsel announced the elements of the conspiracy
charge, including the requirement that the conspiracy was
"accomplished through deceitful or dishonest means," and the
Court directed Fuselier to listen carefully to counsel's
recitation of the legal elements as well as the factual bases and
not to plead guilty if he had a problem with the elements or the
facts.

        The Court then asked Fuselier:  "[D]o you understand
the conspiracy charge as alleged against you in this 18-page
Indictment?  Do you have it in mind, or do you need me to read it
to you?"  Fuselier responded he "had it in mind" and did not need
the Court to read the Indictment to him.  As noted, the
Indictment correctly pleaded the stated offense as follows:

> Beginning in or about June 2002 and continuing up
> to and including the present, in the District of
> Oregon, and elsewhere, defendants JOSEPH OQUENDO
> SALADINO, RICHARD ALLEN FUSELIER, MARCEL ROY
> BENDSHADLER, MICHAEL SEAN MUNGOVAN (A.K.A. CAJUN
> MIKE), and RICHARD J. ORTT, and others known and
> unknown to the grand jury, unlawfully and
> knowingly combined, conspired, confederated, and
> agreed together to defraud the United States *by
> deceitful and dishonest means* by impeding,
> impairing, obstructing, and defeating the lawful
> government functions of the Internal Revenue
> Service, an agency of the United States, in the
> ascertainment, computation, assessment and
> collection of revenue, that is, federal individual
> income taxes.

Indictment at ¶ 18 (emphasis added).

19 - OPINION AND ORDER

Thus, although the Court did not specifically reiterate the deceitful or dishonest means element in its discussion with Fuselier, that element was included in the Indictment and in the government's recitation.  Moreover, Fuselier confirmed he had the charge in mind and did not need the Court to read it to him before proceeding.

In addition, the Court inquired of Fuselier as to whether the information in subparagraphs a-e of paragraph 25 of the Plea Petition was true, and Defendant agreed it was.  As noted, in paragraphs b, c, and e, Defendant agreed

> b.  The returns and amended returns we filed on behalf of these clients accurately stated the clients' gross income, but asserted the theory that income earned from non-commercial activity (including personal labor or services) did not constitute taxable income.
>
> c.  Many of the returns that we filed for these taxpayers were frivolous in that they were filed for the sole purpose of delaying the criminal enforcement actions against the taxpayers, but before we had any reason to believe that the claim was legally valid.
>
> * * *
>
> e.  Accordingly, we did conspire to defraud the United States by impeding, impairing, obstructing or defeating the lawful functions of the Internal Revenue Service of the Department of the Treasury and committed at least one overt act in furtherance of that conspiracy.

Finally, when the government set out the factual bases for the charge at the plea proceeding, it specifically asserted

Fuselier assisted individuals to "claim false tax reductions,"
"prepared and caused to be prepared fraudulent tax returns using
the claim-of-right program," and received "various frivolous
filing letters that Mr. Saladino's clients would receive from the
IRS after filing tax returns using the claim-of-right program."

    Against this background, the Court notes Fuselier has
not provided any testimony in support of his Motion that explains
his thought processes at the time of his plea and specifically
has not testified he did not understand at the time of his plea
that deceitful or dishonest means was an element of the charge.
Thus, on this record, the Court does not know at this stage what
inferences to draw from Fuselier's trial testimony that
potentially negate the deceitful or dishonest means element of
the offense.  The Court notes there are other explanations why
Fuselier's trial testimony might reflect an inconsistency with
his plea proceeding:  Perhaps Fuselier had a change of heart
regarding his plea or perhaps he was reluctant, once on the
witness stand, to fully cooperate with the government against his
co-defendants.  Although the Court will defer resolution of that
question to the sentencing hearing, the Court is unpersuaded by
this record that Fuselier failed to understand or to appreciate
that deceitful or dishonest means was a material element of the
crime to which he pled guilty.

    Accordingly, the Court concludes Fuselier has not

established the plea colloquy was inadequate or that he pled guilty without understanding the nature of the charge or without realizing his conduct actually fell within the elements of the charge.

**C.   There was a sufficient factual basis for Fuselier's guilty plea.**

Fuselier also contends there was not a sufficient factual basis for his guilty plea.  As noted, Federal Rule of Criminal Procedure 11 requires the Court to determine that a plea has a factual basis.  When considering whether a factual basis for a guilty plea is adequate, the Court may consider "all of the evidence before it at the time of judgment."  *Lomow*, 266 F.2d at 1017.

As noted, to convict a defendant of violating 18 U.S.C. § 371,

> the government must prove only that (1) the defendants entered into an agreement (2) to obstruct a lawful function of the IRS (3) by deceitful or dishonest means, and (4) at least one overt act was committed in furtherance of the conspiracy. *See United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993).

*Poseley*, 2008 WL 467695, at *1.

At trial Fuselier testified he, among other things, (1) asserted in tax returns filed with the IRS that compensation for personal services was not taxable and took a full deduction for those amounts on behalf of his clients; (2) received disallowance notices from the IRS regarding those deductions; (3) received the

22 - OPINION AND ORDER

*Ledford* and *Clark* decisions and understood those courts concluded the federal tax code clearly provides that income from personal services is taxable; (4) continued to assert income from personal services is not taxable in tax returns and in litigation before the Federal Court of Claims despite warnings from various courts; (5) received between 2001 and 2005 court opinions and frivolous-filing letters from the IRS denying the claim-of-right theory and indicating there was not any basis in law for the assertion that compensation for personal services was not taxable; and (6) without disclosing to his clients adverse decisions like *Ledford* and *Clark,* continued to advise and to assert on behalf of his clients that compensation for personal services was not taxable despite these opinions and notices.

The government contends this evidence is sufficient to establish that a factual basis exists to conclude Fuselier acted with dishonest or deceitful means and relies on *United States v. Tuohey*, 867 F.2d 534 (9ᵗʰ Cir. 1989), to support its contention. In *Tuohey* the defendant

> conspired with other individuals to gain control
> of the Bank of Northern California without
> reporting the transaction to the Federal Deposit
> Insurance Corporation ("FDIC"). Although the
> conspirators planned to hold 51 percent of the
> shares as a group, they purchased the stock as
> individuals, each conspirator purchasing fewer
> than ten percent of the shares. They thus evaded
> the reporting requirements applicable to changes
> in control of federally insured banks.

*Id.* at 535. The defendant pled guilty to one count of Conspiracy

23 - OPINION AND ORDER

to Defraud in violation of 18 U.S.C. § 371.  *Id.* at 536.  The
Ninth Circuit affirmed the defendant's conviction and noted the
meaning of the term "defraud" in § 371 is broader than its
meaning at common law.  The Ninth Circuit concluded "the
defendants willfully conspired to avoid a reporting requirement
imposed by statute.  Their evasion of their duty certainly
impaired the proper regulatory function of the FDIC.  A
reasonable trier of fact could conclude that this conduct
constituted a fraud upon the government."  *Id.* at 538.  In
*Caldwell* the Ninth Circuit noted *Tuohey* did not "mention[] the
dishonest means requirement" of § 371.  The *Tuohey* court,
however, did not "have to decide whether section 371 reached
conspiracies to obstruct the government in ways that were neither
deceitful nor dishonest" because that case "involved deceitful
and dishonest conduct."  *Caldwell*, 989 F.2d at 1059 n.3.

     This case clearly involved conduct that went well
beyond repeated and obstinate, open and public efforts to
interfere with the lawful function of the IRS in ascertaining and
collecting taxes owed on the wages and self-employment income of
Defendant's clients.  At the least, by the time Fuselier and his
convicted co-defendants acquired actual knowledge of the *Ledford*
and *Clark* decisions adverse to their own clients's interests and,
nonetheless, chose to continue to market their programs without
disclosing these adverse rulings to those clients, their conduct

was, in fact, "deceitful or dishonest" as those terms are ordinarily understood.

On this record, the Court concludes there was an adequate factual basis to support the deceitful or dishonest means element of the offense of conviction.

### III. Legal Innocence

Fuselier also moves to withdraw his plea on the ground that his testimony at trial demonstrates a claim of legal innocence. Fuselier relies on two cases to support his claim of legal innocence:  *United States v. Garcia*, 401 F.3d 1008 (9th Cir. 2005), and *Oretega-Ascanio*, 376 F.3d 879 (9th Cir. 2004).  The government asserts Defendant has not provided any new facts, witnesses, or changes in the law between his plea and sentencing to support his claim of actual innocence.  The government also contends *Garcia* and *Oretega-Ascanio* are distinguishable.

In *Garcia* the defendant pled guilty to manufacturing methamphetamine and possession of a firearm.  After entry of the plea and before sentencing, however, the defendant located a new witness who submitted an affidavit that significantly contradicted the government's witness.  *Id.* at 1012.  The district court denied the defendant's motion to withdraw his plea, but the Ninth Circuit reversed on the ground that the discovery of new evidence that directly contradicted the government's case was a fair and just reason for withdrawal.  *Id.*

25 - OPINION AND ORDER

Fuselier has not presented any such new evidence.

In *Oretega-Ascanio*, following the entry of the defendant's plea and before sentencing, the Supreme Court issued a decision that overruled prior Ninth Circuit law and permitted certain defendants to challenge their underlying deportation.  376 F.3d at 881-82.  The district court denied the defendant's motion to withdraw his plea, and the Ninth Circuit reversed on the ground that the district court had "applied the wrong legal standard to [the defendant's] motion" due to the change in the law, and, therefore, the district court abused its discretion when it denied the defendant's motion.  Fuselier has not pointed to any intervening change in the law.

On this record, and in the exercise of the Court's discretion, the Court concludes Fuselier has not established he is factually or legally innocent.  Accordingly, the Court denies Fuselier's Motion to Withdraw on the basis of actual innocence.

**IV.  There was not a "fatal variance" between the crime charged in the Indictment and the crime to which Fuselier pled guilty.**

Fuselier moves to withdraw his guilty plea on the ground that "the essential correlation between the crime alleged in the indictment and the offense to which the defendant pled guilty was absent."  Specifically, Fuselier asserts the Indictment alleged a conspiracy between Fuselier and the FPC, but the conspiracy that formed the basis of Fuselier's plea was his agreement with Ortt

to operate Compensation Consultants.  In addition, according to
Fuselier, the Indictment alleged the object of the conspiracy was
to impede, impair, obstruct, and defeat the lawful government
functions of the IRS in the ascertainment, computation,
assessment, and collection of revenue.  According to Fuselier,
however, the sole object of the conspiracy to which he pled was
to "delay the criminal enforcement actions against the taxpayers
. . . who were being threatened with criminal enforcement and
prosecution for failure to file."

Fuselier relies on *United States v. Mastrapa*, 509 F.3d 652
(4th Cir. 2007), to support his assertion that the Court should
allow him to withdraw his plea because there was a "fatal
variance" between the crime charged in the Indictment and the
crime to which Fuselier pled.  In *Mastrapa*, the defendant pled
guilty to Conspiracy to Distribute 500 Grams or More of
Methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1).
The defendant admitted at the plea proceeding that he "had agreed
to give two men a ride and help carry their grocery bags but that
he did not know them or what they were doing."  *Id*. at 654.  At
the plea colloquy, the defendant "refused, despite questioning by
the district court, to admit to the factual basis necessary to
support the charges against him."  *Id*. at 654-55.  Nevertheless,
the court accepted the defendant's guilty plea relying on the
affidavit of a Drug Enforcement Agency (DEA) Agent who testified

27 - OPINION AND ORDER

he observed the defendant drive his vehicle to the hotel where

the DEA Agent would ultimately make an undercover purchase of

methamphetamine from Dany Medina-Lovos and Fidel Chicas-

Hernandez. *Id.* at 655. The DEA Agent further testified he

observed the defendant assist Chicas-Hernandez in carrying

grocery bags, which turned out to contain five pounds of

methamphetamine, into a hotel room. The DEA Agent did not

testify further as to the defendant's involvement in the

conspiracy or as to his knowledge of the true nature of the

transaction. *Id.* at 656. The Fourth Circuit vacated the

defendant's plea and remanded the matter to the district court on

the grounds that the defendant did not admit the necessary *mens*

*rea* and the record did not contain a sufficient factual basis to

support the elements of the offense. *Id.* at 655.

Here the government recited the following facts as evidence

against Fuselier, and Fuselier accepted them at the plea

proceeding:

> Mr. Fuselier first had contact with Mr. Saladino
> in mid-2002, and that Mr. Saladino traveled to New
> Orleans and met with Mr. Fuselier and Mr. Ortt to
> discuss the claim-of-right program. The Government
> would show that Mr. Fuselier provided the
> claim-of-right program to Mr. Saladino with
> knowledge that he would use it, although they may
> have differed on the marketing approach as to how
> to use it.
>
> The Government would show that Mr. Saladino turned
> to  Mr. Fuselier periodically for advice and
> counsel about the substance of the claim-of-right
> program and certain issues related to the

28 - OPINION AND ORDER

implementation and marketing of the claim-of-right
program.

The Government would show that Mr. Saladino would
forward to Mr. Fuselier various frivolous filing
letters that Mr. Saladino's clients would receive
from the IRS after filing tax returns using the
claim-of-right program.

The Government would show that Mr. Saladino was a
source of clients for Mr. Fuselier, who would
refer people to - Mr. Saladino would refer
individuals to Mr. Fuselier who were threatened
with criminal prosecution and had various problems
with the IRS.

The Government would show that Mr. Fuselier
trained defendants and I'm just going to focus on
two here -- the several nonlawyers, who were
called litigators, to work with Mr. Saladino in
filing claims against the IRS in court.  And in
fact Mr. Saladino paid for that training, made
those payments to Mr. Fuselier.

The Government would show that Mr. Fuselier also
paid for other services he provided, and that we
have records showing at least 11 payments, ranging
from 200 dollars to 500 dollars during the period
September 24th of 2002, through May 5th of 2003.

The Government would show that Mr. Saladino and
Mr. Fuselier discussed various court cases, and
that Mr. Saladino would, from time to time, send
litigation paperwork to Mr. Fuselier for his
review. The Government would show that
Mr. Fuselier would send his news newsletter to
Mr. Saladino, and would instruct him on the law.

And the Government would show that Mr. Saladino
discussed with Mr. Fuselier various court cases,
like the Ledford decision and the Gary Clark
Oregon tax court case.

* * *

The Government would show that the Internet was
used as a means of payment, and that Mr. Saladino
would instruct people to pay with blank money

29 - OPINION AND ORDER

> orders, and that Mr. Saladino paid Mr. Fuselier
> through the Internet and the EVO cash manner of
> payment.

Blackman Decl., Ex. 2 at 32-36.  In addition, prior to the
recitation of facts, the government advised Fuselier that the
elements of the crime included the intent to defraud the United
States by obstructing, impeding, impairing, and defeating the
lawful functions of the IRS in the ascertainment, computation,
assessment, and collection of revenue (namely, federal income
taxes) through deceitful or dishonest means.  Fuselier did not
object to the elements or contend his conduct did not satisfy the
elements at any time during the plea proceeding.

Finally, Fuselier's trial testimony reflects:  (1) in June
2002 he met with co-defendants Saladino and Ortt; (2) following
that meeting, he agreed to assist Saladino and FPC implement the
claim-of-right program, including preparing tax returns and
supporting litigation; (3) Saladino agreed to share with Fuselier
the responses from FPC's customers; (4) Fuselier knew and
understood FPC had a multi-level marketing plan that included the
claim-of-right program; (5) he provided ongoing assistance to FPC
in its implementation of the claim-of-right program, including
tax returns and litigation support; (6) he was paid for his
advice and ongoing support of FPC; (7) he shared clients with
FPC; (8) he attended some of FPC's litigation marketing
conference calls and was available to answer questions from FPC's

30 - OPINION AND ORDER

clients; and (9) he trained "litigators" for FPC to use in its operations.

In contrast to the defendant in *Mastrapa*, the facts to which Fuselier pled at the plea proceeding as well as the evidence he provided at trial establish he conspired to impede, impair, obstruct, and defeat the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of revenue and that he did so through deceitful or dishonest means.

On this record, and in the exercise of its discretion, the Court concludes Fuselier has not established there was a "fatal variance" between the crime charged in the Indictment and the crime pled to by Fuselier.  Accordingly, the Court denies Fuselier's Motion to Withdraw on that basis.


## CONCLUSION

For these reasons, the Court **DENIES** Fuselier's Motion (#364) to Withdraw Plea of Guilty.

The Court also requests Messrs. Kauffman and Blackman to confer with their client to determine which of the two lawyers will continue to represent Fuselier through sentencing as it is no longer necessary for both counsel to be representing him.  The Court **DIRECTS** counsel to file, no later than **May 4, 2010,** a

notice resolving this question.

       IT IS SO ORDERED.

       DATED this 20th day of April, 2010.


                                  _____
                                  ANNA J. BROWN
                                  United States District


32 - OPINION AND ORDER