IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    07-CR-535-BR

       Plaintiff,

                              OPINION AND ORDER

v.

JOSEPH OQUENDO SALADINO,
RICHARD ALLEN FUSELIER,
MARCEL ROY BENDSHADLER,
MICHAEL SEAN MUNGOVAN, and
RICHARD J. ORTT,

       Defendants.


DWIGHT C. HOLTON
United States Attorney
ALLAN M. GARTEN
MICHELLE HOLMAN KERIN
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

       Attorneys for Plaintiff

PHILIP A. LEWIS
111 S.W. Fifth Avenue
Suite 1650
Portland, OR 97204
(503) 226-3498

        Attorney for Defendant Marcel Roy Bendshadler


BROWN, Judge.

        This matter comes before the Court on Defendant Marcel Roy
Bendshadler's Motion (#135) for New Trial and Motion (#413) for
Judgment of Acquittal.  The Court concludes the record is
sufficiently developed, and, therefore, oral argument would not
be helpful in resolving these Motions.  For the reasons that
follow, the Court **DENIES** Defendant's Motions.


## BACKGROUND

        On December 20, 2007, a grand jury indicted Defendants
Joseph Oquendo Saladino, Richard Allen Fuselier, Marcel Roy
Bendshadler, Michael Sean Mungovan, and Richard J. Ortt on one
count of Conspiracy to Defraud in violation of 18 U.S.C.
§ 371.

        On November 23, 2009, the jury found Bendshadler guilty of
the charge.

        On July 15, 2010, Bendshadler filed a Motion for New Trial.
On July 16, 2010, Bendshadler filed a Motion for Judgment of
Acquittal.


2 - OPINION AND ORDER

## DEFENDANT BENDSHADLER'S MOTION FOR NEW TRIAL

Defendant Bendshadler moves for a new trial on the grounds that (1) he was denied the right to testify that he was acting in good faith and (2) he was denied effective assistance of counsel because his previous trial counsel[1] failed to assert Bendshadler's right to testify and failed to develop and to produce evidence concerning Bendshadler's mental illness.

### I.    Standards

Federal Rule of Criminal Procedure 33(a) provides in pertinent part:  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  The defendant carries the burden to justify the need for a new trial.  The determination as to whether the defendant has satisfied that burden rests in the discretion of the court.  *See United States v. Mack*, 362 F.3d 597, 600 (9th Cir. 2004).  If the court concludes the evidence is sufficient to sustain the verdict but a serious miscarriage of justice may have occurred, the court may grant the motion for a new trial.  *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000).

---

[1] Until December 7, 2009, Defendant Bendshadler was represented by Assistant Federal Defender Nancy Bergeson. Defendant's current counsel, Philip Lewis, has represented Bendshadler since that time, but of course, did not participate at the trial.

## II.  Discussion

As noted, Bendshadler moves for a new trial on the grounds that (1) he was denied the right to testify that he was acting in good faith and (2) he was denied effective assistance of counsel because his previous trial counsel failed to assert Bendshadler's right to testify and failed to develop and to produce evidence concerning his mental illness.

The government contends Bendshadler was not denied the right to testify; the Court should not address the ineffective-assistance-of-counsel arguments; and, in any event, Bendshadler was not denied effective assistance of counsel.

### A.  Right to testify

"'The right of an accused to testify on his own behalf in a criminal trial is guaranteed by the Fifth, Sixth and Fourteenth Amendments.'"  *Christian v. Frank*, 365 Fed. Appx. 877, 880 (9th Cir. 2010)(quoting *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)).  "A defendant's right to testify, however, is not absolute and may, in particular cases, be subservient to other legitimate interests in the criminal trial process.  Restrictions on the right are proper provided that they are not 'arbitrary or disproportionate to the purposes [that the restrictions are] designed to serve.'"  *Id*. (quoting *Rock*, 483 U.S. at 56).

As noted, Bendshadler asserts he should receive a new trial because he contends the Court denied him the right to

testify that he was acting in good faith.  To support his
assertion, Bendshadler points to the following exchange that
occurred very near the end of the four Defendants' collective
presentation of their cases, after Defendant Ortt testified, and
after Defendants Saladino and Mungovan each elected not to
testify:

>           THE COURT:     All right.  And,
> Mr. Bendshadler, good morning.
>
>           DEFENDANT BENDSHADLER:   Good morning.
>
>           THE COURT:     Are - - Ms. Bergeson told me
> yesterday that it was her expectation that you
> were choosing not to testify, as well. Is that
> accurate?
>
>           DEFENDANT BENDSHADLER:   Not exactly
> accurate.  I would love to testify, but there's
> only one problem. You won't allow me to testify
> for the following reasons.  You will not allow me
> to address the jury and inform them of what the
> law is, because you've instructed them and made
> them take an oath that they'll follow the law as
> you see fit, rather than as the Supreme Court has
> said that they have the right to judge the facts
> and the law.
>
>           Furthermore, you won't let me instruct the
> jury about the multiple frauds (pointing) that
> these people have committed upon this court.
> Frauds by introducing evidence into this court
> that's fraudulent.
>
>           You won't allow me -- you will not allow me
> to address the frauds that have been introduced
> into this court by you and your actions, knowing
> that they have introduced frauds into this court.
>
>           You will not allow me to tell the jury the
> truths in these matters.  As for all of these
> matters for all of these reasons, excuse me, I
> can' t address the jury because I am being

hamstrung and hand-tied, and being denied my due
process rights.

And under the holding of the Supreme Court in
Johnson versus Zerps (phonetic), this Court has
failed to constitute itself in the course of the
proceedings and, therefore, has lost its
jurisdiction to proceed in these manners, it is
another fraud upon this court.

I have sat here silently, waiting to finally
address this Court on the record on some of these
issues.  And I know these two, here, are
squirming, because I'm talking right now.  But it
is my right to address the Court.  That I have
been wronged. There is no moving party.  We've
never seen an injured party up on this stand.  The
United States -- where is the United States on the
stand?  And, therefore, I'm sitting here, going,
where's my accuser?  Where's the injured party?
All of these are frauds upon the court.  So I
can't testify.

THE COURT:    Thank you, Mr. Bendshadler.

The Court construes the defendant's remarks
as a decision not to testify.  And I don't see any
need to address them on the merits, except to note
that the defendant is correct.  I would not permit
him to address the jury along the lines he has
summarized.  I would, however, certainly permit
him to testify, if he chose, with respect to any
matter relevant to the case.  And, of course, he
would be exposed to cross-examination on any
testimony he offered on direct.

I will not make any further inquiry of Mr.
Bendshadler on the matter.  I'll simply note to
the jury I'll allow each counsel to rest in the
presences of the jury, when Ms. Morgan's witnesses
are concluded.

Please bring in the jury.

Yes, Ms. Bergeson?

MS. BERGESON:  I also have other -- there are
several exhibits I just wanted to make of the

record, that -- that we will be offering before I rest formally. And I just -- just so the record is clear, when that happens.

THE COURT:      Certainly.  Very good.

Please bring in the jury.

Tr. 2002-04.

Bendshadler concedes he is not entitled to instruct the jury as to the law, but he asserts the testimony that he wanted to offer would have been relevant to establish that he did not willfully or knowingly violate tax law.  Bendshadler contends the above exchange reflects there was either a misunderstanding between him and his attorney concerning his desire to testify or that he had changed his mind.  Bendshadler asserts he would have testified that he genuinely believed his understanding of the law was correct; that the Internal Revenue Service (IRS) and Court statements to the contrary were incorrect; and, as a result, that he did not intend to impede or to interfere with the ability of the IRS to collect lawfully owed taxes.

In response, the government contends the Court merely denied Bendshadler the right to instruct the jury about the law or to testify about irrelevant matters, but the Court did not deny him the right to testify.  In particular, the government points out that Bendshadler's statements reflected he intended to introduce three kinds of evidence through his testimony: (1) evidence of what the law is, (2) evidence of purported

prosecutor misconduct, and (3) evidence of purported misconduct by the Court in conducting the jury trial.  None of this evidence was admissible, and any attempt by Bendshadler to testify to these areas would have been met with an adverse ruling by the Court.  Moreover, the Court notes Defendant Bendshadler's fallacious theories about prosecutorial misconduct and the purported lack of jurisdiction of the District Court to try this case, among other frivolous propositions, were a constant, underlying theme in the case that the Court repeatedly made clear to the parties were not relevant and not admissible as to the "good faith" issues that were properly before the jury.

As noted, the Court informed Bendshadler that he could testify about admissible evidence, which would have included his alleged good faith belief that he was complying with the law. Indeed, Bendshadler had observed Defendant Ortt testify within these same parameters set by the Court.  Bendshadler, however, made clear to the Court that he had no intention of restricting his testimony to the material the Court had ruled admissible.

Finally, there is not any indication on the record or any evidence offered by Bendshadler that "there had been either a misunderstanding between Mr. Bendshadler and [Ms. Bergeson] concerning his desire to testify, or that, unbeknownst to [Ms. Bergeson], Mr. Bendshadler changed his mind."  The record merely reflects Bendshadler disagreed with the Court's prior evidentiary

rulings prohibiting him from introducing various evidence.

On this record, the Court concludes Bendshadler has not established that he was denied his right to testify in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments or that there has been any serious miscarriage of justice that led to the Guilty Verdict returned by the jury.

**B.    Ineffective assistance of counsel**

Bendshadler also moves for a new trial on the ground that he received ineffective assistance of counsel because Ms. Bergeson failed to request a recess to determine whether Bendshadler would like to testify after his discussion with the Court and because the mental-health evaluation of Bendshadler Ms. Bergeson obtained was limited to only two issues.[2]

Generally a Motion for New Trial is an inappropriate forum for an ineffective-assistance-of-counsel claim. *United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir. 1991).  As the Ninth Circuit explained in *Molina*,

> [t]he customary procedure for raising a claim of ineffective assistance of counsel in this Circuit is by collateral attack under 28 U.S.C. § 2255. We prefer appellants to raise such claims in a habeas proceeding because it permits the district judge first to decide whether the claim has merit, and second, if it does, to develop a record as to

---

[2] The Court notes it was not made aware of any particular mental-health issues of Defendant Bendshadler during his trial. The Court, however, anticipates receiving arguments from Defendant's current counsel in support of a reduced sentence based in part on such issues.

what counsel did, why it was done, and what, if
any, prejudice resulted.

*Id*.  *See also United States v. Daychild,* 357 F.3d 1082, 1095 (9th
Cir. 2004)(declined to review ineffective-assistance-of-counsel
claim on direct appeal).  As the dissent noted in *Schad v. Ryan*,

> [i]t will be a rare case in which a prisoner
> claiming ineffective assistance of counsel cannot
> offer 'stronger evidence' of deficient performance
> in post-conviction proceedings than was available
> at sentencing.  Indeed, we have repeatedly
> declined to address *Strickland* claims in direct
> appeals precisely because such a claim may be
> better presented following development of facts
> outside the original record.

606 F.3d 1022, 1030 n.1 (9th Cir. 2010).

The Court concludes Bendshadler would be better able to
develop the necessary record to support a claim for ineffective
assistance of counsel in a § 2255 proceeding.  Moreover, in that
context, he could also minimize the risk that he would be faced
with additional issues involving estoppel and successive habeas
claims if he were permitted to litigate that issue now and
attempted to do so in a later § 2255 habeas petition.
Accordingly, the Court, in the exercise of its discretion,
declines to address Bendshadler's ineffective-assistance-of-
counsel claim at this stage of the proceedings.

In summary, on this record, the Court, in the exercise of
its discretion, denies Bendshadler's Motion for New Trial.

## DEFENDANT BENDSHADLER'S MOTION FOR
## JUDGMENT OF ACQUITTAL

Bendshadler moves for a judgment of acquittal on the ground that there was not sufficient evidence presented at trial to establish that Bendshadler carried out his actions with the intent to impede, to impair, to obstruct, or otherwise to defeat the function of the IRS.  Specifically, Bendshadler contends there was not sufficient evidence presented at trial to establish that Bendshadler's "target" was the IRS rather than customers of Freedom Privacy Committee (FPC).[3]

## I.    Standards

Federal Rule of Criminal Procedure 29(a) provides in pertinent part:

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.

When ruling on a Rule 29 motion, the Court must view the evidence in the light most favorable to the government.  *United States v. Esquivel-Ortega*, 484 F.3d 1221, 1224 (9th Cir. 2007).  Evidence is sufficient to support a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Moses*, 496 F.3d 984, 987

---

[3] Bendshadler appears to concede there was sufficient evidence at trial to establish that, in the light most favorable to the government, he used deceitful and dishonest means when dealing with FPC customers.

(9th Cir. 2007)(emphasis in original)(citations and quotations omitted).

## II.  Discussion

The government asserts the evidence, when viewed in the light most favorable to the government, sufficiently established that Bendshadler's "target" was the IRS rather than customers of FPC and to sustain Bendshadler's conviction.  The Court agrees.

For example, at trial Mr. Lettenmaier, a long-time customer of Bendshadler and FPC, testified that when he purchased his "expatriation package" from Bendshadler, he understood the effect of expatriating was "to remove the fictitious corporate entity, so that one could no longer be taxed.  Because that's – that's how the Government basically got their hooks into you, by that corporate entity.  And that's the only way that they could draw that money."  Tr. 627.  This evidence was sufficient for a rational trier of fact to believe that Bendshadler agreed with his co-conspirators to market and to sell multiple tax-evasion schemes with the primary purpose of impairing, obstructing, or otherwise defeating the collection of income taxes by the United States.

Similarly, John Sanderson testified at trial that Bendshadler marketed FPC's claim-of-right program and advised Sanderson that he could recover three years back taxes as well as a refund of Medicare payments that he had made through wage

deductions.  Tr. 1255, 1259.  When the IRS issued "frivolous-
filing" letters, Bendshadler encouraged FPC's customers to
litigate the IRS's decision, and he acted as the liaison for
information between FPC and the customer.  Tr. 1260-62.  Mark
Dinger testified Bendshadler continued to make representations
that the IRS was not following the law, and Bendshadler
represented FPC would continue to provide support to Dinger even
as his false tax returns were being rejected by the IRS.
Tr. 1353-54.

In particular, there was abundant evidence at trial that
established Bendshadler continued to market and to sell FPC's
final iteration of the Claim of Right known as the Affidavit
Statement despite his actual knowledge of frivolous-filing
letters from the IRS, failed court cases and adverse court
decisions, and an injunction[4] prohibiting FPC and its agents from
continuing to market and to sell abusive tax returns.  Indeed,
IRS Revenue Agent Kristen Emminger testified some of the
discredited arguments from the Claim of Right program,
nonetheless, were incorporated into the Affidavit Statement.
Tr. 778-79.

Based on this evidence, the Court concludes the evidence was
more than sufficient for a rational juror to find the reason

---

[4] The injunction was issued in *Ledford v. United States*, 297
F.3d 1378 (Fed. Cir. 2002), where it was self-evident that the
IRS was seeking a court's protection.

13 - OPINION AND ORDER

Bendshadler continued to market the claim-of-right products based on arguments rejected by the IRS and the courts was because Bendshadler wanted to impair, to impede, or to obstruct the lawful functions of the IRS, including the ascertainment and collection of taxes.

Accordingly, the Court denies Bendshadler's Motion for Judgment of Acquittal.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Defendant Bendshadler's Motion (#135) for New Trial and Bendshadler's Motion (#413) for Judgment of Acquittal.

IT IS SO ORDERED.

DATED this 11th day of August, 2010.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

14 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    07-CR-535-BR

       Plaintiff,

                                   OPINION AND ORDER

v.

JOSEPH OQUENDO SALADINO,
RICHARD ALLEN FUSELIER,
MARCEL ROY BENDSHADLER,
MICHAEL SEAN MUNGOVAN, and
RICHARD J. ORTT,

       Defendants.


DWIGHT C. HOLTON
United States Attorney
ALLAN M. GARTEN
MICHELLE HOLMAN KERIN
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

      Attorneys for Plaintiff


1 - OPINION AND ORDER

PHILIP A. LEWIS
111 S.W. Fifth Avenue
Suite 1650
Portland, OR 97204
(503) 226-3498

      Attorney for Defendant Marcel Roy Bendshadler


BROWN, Judge.

      This matter comes before the Court on Defendant Marcel Roy
Bendshadler's Motion (#135) for New Trial and Motion (#413) for
Judgment of Acquittal.  The Court concludes the record is
sufficiently developed, and, therefore, oral argument would not
be helpful in resolving these Motions.  For the reasons that
follow, the Court **DENIES** Defendant's Motions.


<u>**BACKGROUND**</u>

      On December 20, 2007, a grand jury indicted Defendants
Joseph Oquendo Saladino, Richard Allen Fuselier, Marcel Roy
Bendshadler, Michael Sean Mungovan, and Richard J. Ortt on one
count of Conspiracy to Defraud in violation of 18 U.S.C.
§ 371.

      On November 23, 2009, the jury found Bendshadler guilty of
the charge.

      On July 15, 2010, Bendshadler filed a Motion for New Trial.
On July 16, 2010, Bendshadler filed a Motion for Judgment of
Acquittal.


2 - OPINION AND ORDER

## <u>DEFENDANT BENDSHADLER'S MOTION FOR NEW TRIAL</u>

Defendant Bendshadler moves for a new trial on the grounds that (1) he was denied the right to testify that he was acting in good faith and (2) he was denied effective assistance of counsel because his previous trial counsel[1] failed to assert Bendshadler's right to testify and failed to develop and to produce evidence concerning Bendshadler's mental illness.

### I.    Standards

Federal Rule of Criminal Procedure 33(a) provides in pertinent part:  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  The defendant carries the burden to justify the need for a new trial.  The determination as to whether the defendant has satisfied that burden rests in the discretion of the court.  *See United States v. Mack*, 362 F.3d 597, 600 (9th Cir. 2004).  If the court concludes the evidence is sufficient to sustain the verdict but a serious miscarriage of justice may have occurred, the court may grant the motion for a new trial.  *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000).

---

[1] Until December 7, 2009, Defendant Bendshadler was represented by Assistant Federal Defender Nancy Bergeson. Defendant's current counsel, Philip Lewis, has represented Bendshadler since that time, but of course, did not participate at the trial.

3 - OPINION AND ORDER

## II.  Discussion

As noted, Bendshadler moves for a new trial on the grounds that (1) he was denied the right to testify that he was acting in good faith and (2) he was denied effective assistance of counsel because his previous trial counsel failed to assert Bendshadler's right to testify and failed to develop and to produce evidence concerning his mental illness.

The government contends Bendshadler was not denied the right to testify; the Court should not address the ineffective-assistance-of-counsel arguments; and, in any event, Bendshadler was not denied effective assistance of counsel.

### A.   Right to testify

"'The right of an accused to testify on his own behalf in a criminal trial is guaranteed by the Fifth, Sixth and Fourteenth Amendments.'" *Christian v. Frank*, 365 Fed. Appx. 877, 880 (9th Cir. 2010)(quoting *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987)).  "A defendant's right to testify, however, is not absolute and may, in particular cases, be subservient to other legitimate interests in the criminal trial process.  Restrictions on the right are proper provided that they are not 'arbitrary or disproportionate to the purposes [that the restrictions are] designed to serve.'"  *Id*. (quoting *Rock*, 483 U.S. at 56).

As noted, Bendshadler asserts he should receive a new trial because he contends the Court denied him the right to

4 - OPINION AND ORDER

testify that he was acting in good faith.  To support his
assertion, Bendshadler points to the following exchange that
occurred very near the end of the four Defendants' collective
presentation of their cases, after Defendant Ortt testified, and
after Defendants Saladino and Mungovan each elected not to
testify:

>            THE COURT:     All right.  And,
>      Mr. Bendshadler, good morning.
>
>            DEFENDANT BENDSHADLER:   Good morning.
>
>            THE COURT:     Are - - Ms. Bergeson told me
>      yesterday that it was her expectation that you
>      were choosing not to testify, as well. Is that
>      accurate?
>
>            DEFENDANT BENDSHADLER:   Not exactly
>      accurate.  I would love to testify, but there's
>      only one problem. You won't allow me to testify
>      for the following reasons.  You will not allow me
>      to address the jury and inform them of what the
>      law is, because you've instructed them and made
>      them take an oath that they'll follow the law as
>      you see fit, rather than as the Supreme Court has
>      said that they have the right to judge the facts
>      and the law.
>
>            Furthermore, you won't let me instruct the
>      jury about the multiple frauds (pointing) that
>      these people have committed upon this court.
>      Frauds by introducing evidence into this court
>      that's fraudulent.
>
>            You won't allow me -- you will not allow me
>      to address the frauds that have been introduced
>      into this court by you and your actions, knowing
>      that they have introduced frauds into this court.
>
>            You will not allow me to tell the jury the
>      truths in these matters.  As for all of these
>      matters for all of these reasons, excuse me, I
>      can' t address the jury because I am being

5 - OPINION AND ORDER

hamstrung and hand-tied, and being denied my due process rights.

And under the holding of the Supreme Court in Johnson versus Zerps (phonetic), this Court has failed to constitute itself in the course of the proceedings and, therefore, has lost its jurisdiction to proceed in these manners, it is another fraud upon this court.

I have sat here silently, waiting to finally address this Court on the record on some of these issues.  And I know these two, here, are squirming, because I'm talking right now.  But it is my right to address the Court.  That I have been wronged. There is no moving party.  We've never seen an injured party up on this stand.  The United States -- where is the United States on the stand?  And, therefore, I'm sitting here, going, where's my accuser?  Where's the injured party? All of these are frauds upon the court.  So I can't testify.

THE COURT:      Thank you, Mr. Bendshadler.

The Court construes the defendant's remarks as a decision not to testify.  And I don't see any need to address them on the merits, except to note that the defendant is correct.  I would not permit him to address the jury along the lines he has summarized.  I would, however, certainly permit him to testify, if he chose, with respect to any matter relevant to the case.  And, of course, he would be exposed to cross-examination on any testimony he offered on direct.

I will not make any further inquiry  of Mr. Bendshadler on the matter.  I'll simply note to the jury I'll allow each counsel to rest in the presences of the jury, when Ms. Morgan's witnesses are concluded.

Please bring in the jury.

Yes, Ms. Bergeson?

MS. BERGESON:  I also have other -- there are several exhibits I just wanted to make of the

6 - OPINION AND ORDER

                    record, that -- that we will be offering before I
                    rest formally. And I just -- just so the record is
                    clear, when that happens.

                         THE COURT:      Certainly.  Very good.

                         Please bring in the jury.

Tr. 2002-04.

          Bendshadler concedes he is not entitled to instruct the

jury as to the law, but he asserts the testimony that he wanted

to offer would have been relevant to establish that he did not

willfully or knowingly violate tax law.  Bendshadler contends the

above exchange reflects there was either a misunderstanding

between him and his attorney concerning his desire to testify or

that he had changed his mind.  Bendshadler asserts he would have

testified that he genuinely believed his understanding of the law

was correct; that the Internal Revenue Service (IRS) and Court

statements to the contrary were incorrect; and, as a result, that

he did not intend to impede or to interfere with the ability of

the IRS to collect lawfully owed taxes.

          In response, the government contends the Court merely

denied Bendshadler the right to instruct the jury about the law

or to testify about irrelevant matters, but the Court did not

deny him the right to testify.  In particular, the government

points out that Bendshadler's statements reflected he intended to

introduce three kinds of evidence through his testimony:

(1) evidence of what the law is, (2) evidence of purported

7 - OPINION AND ORDER

prosecutor misconduct, and (3) evidence of purported misconduct by the Court in conducting the jury trial.  None of this evidence was admissible, and any attempt by Bendshadler to testify to these areas would have been met with an adverse ruling by the Court.  Moreover, the Court notes Defendant Bendshadler's fallacious theories about prosecutorial misconduct and the purported lack of jurisdiction of the District Court to try this case, among other frivolous propositions, were a constant, underlying theme in the case that the Court repeatedly made clear to the parties were not relevant and not admissible as to the "good faith" issues that were properly before the jury.

As noted, the Court informed Bendshadler that he could testify about admissible evidence, which would have included his alleged good faith belief that he was complying with the law. Indeed, Bendshadler had observed Defendant Ortt testify within these same parameters set by the Court.  Bendshadler, however, made clear to the Court that he had no intention of restricting his testimony to the material the Court had ruled admissible.

Finally, there is not any indication on the record or any evidence offered by Bendshadler that "there had been either a misunderstanding between Mr. Bendshadler and [Ms. Bergeson] concerning his desire to testify, or that, unbeknownst to [Ms. Bergeson], Mr. Bendshadler changed his mind."  The record merely reflects Bendshadler disagreed with the Court's prior evidentiary

8 - OPINION AND ORDER

rulings prohibiting him from introducing various evidence.

On this record, the Court concludes Bendshadler has not established that he was denied his right to testify in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments or that there has been any serious miscarriage of justice that led to the Guilty Verdict returned by the jury.

**B.    Ineffective assistance of counsel**

Bendshadler also moves for a new trial on the ground that he received ineffective assistance of counsel because Ms. Bergeson failed to request a recess to determine whether Bendshadler would like to testify after his discussion with the Court and because the mental-health evaluation of Bendshadler Ms. Bergeson obtained was limited to only two issues.[2]

Generally a Motion for New Trial is an inappropriate forum for an ineffective-assistance-of-counsel claim. *United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir. 1991). As the Ninth Circuit explained in *Molina*,

> [t]he customary procedure for raising a claim of ineffective assistance of counsel in this Circuit is by collateral attack under 28 U.S.C. § 2255. We prefer appellants to raise such claims in a habeas proceeding because it permits the district judge first to decide whether the claim has merit, and second, if it does, to develop a record as to

---

[2] The Court notes it was not made aware of any particular mental-health issues of Defendant Bendshadler during his trial. The Court, however, anticipates receiving arguments from Defendant's current counsel in support of a reduced sentence based in part on such issues.

> what counsel did, why it was done, and what, if
> any, prejudice resulted.

*Id*.  *See also United States v. Daychild,* 357 F.3d 1082, 1095 (9th

Cir. 2004)(declined to review ineffective-assistance-of-counsel

claim on direct appeal).  As the dissent noted in *Schad v. Ryan*,

> [i]t will be a rare case in which a prisoner
> claiming ineffective assistance of counsel cannot
> offer 'stronger evidence' of deficient performance
> in post-conviction proceedings than was available
> at sentencing.  Indeed, we have repeatedly
> declined to address *Strickland* claims in direct
> appeals precisely because such a claim may be
> better presented following development of facts
> outside the original record.

606 F.3d 1022, 1030 n.1 (9th Cir. 2010).

The Court concludes Bendshadler would be better able to

develop the necessary record to support a claim for ineffective

assistance of counsel in a § 2255 proceeding.  Moreover, in that

context, he could also minimize the risk that he would be faced

with additional issues involving estoppel and successive habeas

claims if he were permitted to litigate that issue now and

attempted to do so in a later § 2255 habeas petition.

Accordingly, the Court, in the exercise of its discretion,

declines to address Bendshadler's ineffective-assistance-of-

counsel claim at this stage of the proceedings.

In summary, on this record, the Court, in the exercise of

its discretion, denies Bendshadler's Motion for New Trial.

**DEFENDANT BENDSHADLER'S MOTION FOR
JUDGMENT OF ACQUITTAL**

Bendshadler moves for a judgment of acquittal on the ground
that there was not sufficient evidence presented at trial to
establish that Bendshadler carried out his actions with the
intent to impede, to impair, to obstruct, or otherwise to defeat
the function of the IRS.  Specifically, Bendshadler contends
there was not sufficient evidence presented at trial to establish
that Bendshadler's "target" was the IRS rather than customers of
Freedom Privacy Committee (FPC).[3]

## I.    Standards

Federal Rule of Criminal Procedure 29(a) provides in
pertinent part:

> After the government closes its evidence or after
> the close of all the evidence, the court on the
> defendant's motion must enter a judgment of
> acquittal of any offense for which the evidence is
> insufficient to sustain a conviction.

When ruling on a Rule 29 motion, the Court must view the evidence
in the light most favorable to the government.  *United States v.
Esquivel-Ortega*, 484 F.3d 1221, 1224 (9th Cir. 2007).  Evidence
is sufficient to support a conviction if "*any* rational trier of
fact could have found the essential elements of the crime beyond
a reasonable doubt."  *United States v. Moses*, 496 F.3d 984, 987

---

[3] Bendshadler appears to concede there was sufficient
evidence at trial to establish that, in the light most favorable
to the government, he used deceitful and dishonest means when
dealing with FPC customers.

11 - OPINION AND ORDER

(9th Cir. 2007)(emphasis in original)(citations and quotations omitted).

## II.  Discussion

The government asserts the evidence, when viewed in the light most favorable to the government, sufficiently established that Bendshadler's "target" was the IRS rather than customers of FPC and to sustain Bendshadler's conviction.  The Court agrees.

For example, at trial Mr. Lettenmaier, a long-time customer of Bendshadler and FPC, testified that when he purchased his "expatriation package" from Bendshadler, he understood the effect of expatriating was "to remove the fictitious corporate entity, so that one could no longer be taxed.  Because that's – that's how the Government basically got their hooks into you, by that corporate entity.  And that's the only way that they could draw that money."  Tr. 627.  This evidence was sufficient for a rational trier of fact to believe that Bendshadler agreed with his co-conspirators to market and to sell multiple tax-evasion schemes with the primary purpose of impairing, obstructing, or otherwise defeating the collection of income taxes by the United States.

Similarly, John Sanderson testified at trial that Bendshadler marketed FPC's claim-of-right program and advised Sanderson that he could recover three years back taxes as well as a refund of Medicare payments that he had made through wage

12 - OPINION AND ORDER

deductions.  Tr. 1255, 1259.  When the IRS issued "frivolous-
filing" letters, Bendshadler encouraged FPC's customers to
litigate the IRS's decision, and he acted as the liaison for
information between FPC and the customer.  Tr. 1260-62.  Mark
Dinger testified Bendshadler continued to make representations
that the IRS was not following the law, and Bendshadler
represented FPC would continue to provide support to Dinger even
as his false tax returns were being rejected by the IRS.
Tr. 1353-54.

    In particular, there was abundant evidence at trial that
established Bendshadler continued to market and to sell FPC's
final iteration of the Claim of Right known as the Affidavit
Statement despite his actual knowledge of frivolous-filing
letters from the IRS, failed court cases and adverse court
decisions, and an injunction[4] prohibiting FPC and its agents from
continuing to market and to sell abusive tax returns.  Indeed,
IRS Revenue Agent Kristen Emminger testified some of the
discredited arguments from the Claim of Right program,
nonetheless, were incorporated into the Affidavit Statement.
Tr. 778-79.

    Based on this evidence, the Court concludes the evidence was
more than sufficient for a rational juror to find the reason

---

    [4] The injunction was issued in *Ledford v. United States*, 297
F.3d 1378 (Fed. Cir. 2002), where it was self-evident that the
IRS was seeking a court's protection.

13 - OPINION AND ORDER

Bendshadler continued to market the claim-of-right products based on arguments rejected by the IRS and the courts was because Bendshadler wanted to impair, to impede, or to obstruct the lawful functions of the IRS, including the ascertainment and collection of taxes.

Accordingly, the Court denies Bendshadler's Motion for Judgment of Acquittal.


**CONCLUSION**

For these reasons, the Court **DENIES** Defendant Bendshadler's Motion (#135) for New Trial and Bendshadler's Motion (#413) for Judgment of Acquittal.

IT IS SO ORDERED.

DATED this 11th day of August, 2010.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


14 - OPINION AND ORDER